MONCURE, P.,
delivered the opinion of the court.
This is an appeal from certain decrees and orders of the circuit court of Roanoke county. The facts of the case, and the pleadings and proceedings in it, so far as it is material to state them, seem to be substantially as follows:
About the 26th of March, 1872, Shepherd Pollard contracted with John M. Brosius to purchase of the latter one steam saw-mill and fixtures, one wagon, one log carrier and one extra large saw; the first at $1,500, -the second at $145, the third at $125, and thp fourth at $20, all aggregated together, at $1,790 or thereabouts, all on time. The said property was to have been delivered on or before the 20th of April, 1872, but was not in fact delivered until the 11th of June, 1872, on which day the said Pollard executed his negotiable note at ninety days for $145, and his three bonds each, for $546.66, with interest thereon from the date thereof till paid, and payable eight, sixteen and twenty-four months after date, respectively. *The " said negotiable note was endorsed or assigned by said Brosius to John R. Steptoe, and the said bonds were made payable to said Steptoe — the said Brosius being, it seems, indebted to the said Steptoe on account of the said mill. On the same day on which^ the said property was delivered, and the said bonds were executed, to-wit: on the said 11th day of June, 1872, the said Pollard executed a deed of trust conveying the same property and a tract of land, two mares and two horses, to Robert S. Quarles, in trust to secure the payment of the said debts to the said Steptoe.
The said Pollard having, as was alleged, made default in the payment of a part of said debt, the said trustee, Quarles, on the 23d of June, 1874, in pursuance of the said deed of trust, advertised for sale the property thereby conveyed; but before it was sold, and on the day on which the sale was advertised to have been made, to-wit: the 14th of July, 1874, the said Pollard applied for and obtained an injunction of said sale from the judge of the circuit court of Roanoke county.
In the bill on which said injunction was obtained, the said Pollard, the complainant, charged, among other things, that “the said property was to be delivered on or before the 20th April, 1872, and to be delivered in good working order, all to be taken to pieces, overhauled, repaired, put in number one working order, and put up again so as to work in good condition on or before said 20th April, 1872, all whereof said Brosius guaranteed to complainant; that on the 11th June, 1872, the said property was all delivered, except a few parts of the wagons, which never were delivered; that the extra large saw never was put up and could not be got to work, but heated and bent and got. warped and limber, and would not work and was perfectly worthless, whereby complainant was damaged $145; that complainant wrote to said Brosius three different times requesting *him to take the said extra saw back or compensate complainant in some way, so that he would not be a looser thereby, but received no answer; that the engine had never been overhauled and repaired and put in good working order, as agreed upon, before its delivery to the complainant, but only blacked up, so that one of the flues was in such condition that it had to_ be plugged by the said Brosius himself after its delivery, and never has been and could not be used at all since its delivery, and that in other respects it was defective and out of order, so as greatly to impair its value to the amount of at least $350; that from the 20th April, 1872, complainant was expecting the said steam saw-mill and other property, and was induced so to expect it by frequent letters from the said Brosius promising to deliver same from week to week, and so was kept from farming and other business to his damage to the extent of at least $200; that complainant paid a negotiable note for $145, given on said purchase; that one bond executed by complainant for $546.66, due 11th June, 1874, was assigned to Charles E. Cocke, to pay which complainant has already made arrangements or has actually paid the whole; that soon after the delivery of said property complainant paid $65 in one milch cow to said Brosius; that complainant knew nothing of steam saw-mills and engines and fixtures at the time of the purchase and delivery thereof to him by said Brosius; that said Steptoe and Brosius were present together at the time of the sale of said property to complainant, but the latter was not aware of the connection of said Steptoe with the transaction until after-wards. “Complainant looked upon said Brosius as the actual owner of the said property, and gave the deed of trust as aforesaid merely to gratify him, and therefore let him have the cow at $65; that he was induced so to look upon said Brosius by the actions of said Brosius and said Steptoe; that it was not until *six months or more afterwards that complainant found out that the said Steptoe was the real owner of the said property,” &c., &c.
The said Steptoe, Quarles and Brosius were made defendants to the said bill and answered the same. The said Brosius in his answer, among other things, says: _ “That in March, 1872, this respondent being indebted to his co-defendant, John R. Steptoe, and desiring to make an arrangement to pay the debt by appropriating the proceeds of the sale of the property specified in the bill, met the plaintiff and said Steptoe at Salem depot some few weeks after having bargained with the plaintiff for a sale of said property, and on that day and at that place delivered the property to the plaintiff in the exact condition in which he had purchased it, and by agreement then and there between them the plaintiff executed his notes or bonds, not to this respondent, but to the said Steptoe, and to secure their payment, the plaintiff that day, in pursuance of an agreement then made at *233 the depot with said Steptoe, executed the deed of trust in the bill mentioned. This respondent was no party to that deed, and is in no way interested in it, the same being matter of arrangement and contract between Pollard and Steptoe to their mutual satisfaction. This respondent denies most positively that there was any warranty of the engine or any of the machinery, and affirms that he refused to warrant it, but left the plaintiff to judge of its value. Tie denies that there was any delay in its delivery, as charged in the bill, but that the property was delivered at Salem depot on the day the notes or bonds and deed of trust were executed, and was there and then received and hauled away by the plaintiff without objection or complaint of any kind,” &c., &c. “Respondent denies that any of this property was owned by his co-defendant, Steptoe, when sold to the plaintiff, but was the bona fide property of this respondent, and Steptoe, as a creditor of ^''respondent, agreed to take the notes or bonds of the plaintiff, properly secured, and give respondent credit therefor. Respondent denies the allegation that the plaintiff sustained damage in his farming operations by any delay in receiving the mill, but on the contrary, told respondent if he had had it sooner than he got it. he could not have used it by reason of other engagements. Respondent denies that there was any partnership between himself and said Steptoe up to and at the time of these transactions, or in the ownership of said property.” “This respondent denies in toto every allegation of the bill imputing fraud, misrepresentation, covin or deceit to him, and insists that when the plaintiff received the property he had purchased from respondent, and recognized the transfer of the price by respondent to said Steptoe, and executed his notes or bonds to said Steptoe, and a deed of trust to secure them, it terminated all interest on the part of this respondent in the subject.”
The answer of Quarles is not material to be stated.
In the answer oí Steptoe he says, among other things, which need not be here repeated, “that he has read the answer of his co-defendant, John M. Brosius, to the bill in this cause, and he hereby adopts the same as a part of this answer, so far as the statements thereof are applicable to his defence.”
Many depositions were taken and filed in the cause on the side both of the plaintiff and defendants. They are very conflicting in their statements; those of the plaintiff tending strongly to sustain the allegations of his bill, while those of the defendants tend strongly to sustain the contrary. It is not material to repeat here the details of the testimony, which is all set out in the record.
On the !)lh of October, 1875, the cause came on to be heard upon the bill and exhibits, answers, depositions and motion of defendants to dissolve the injunction, and was argued by counsel; on consideration whereof, the *court overruled, for the present, the motion to dissolve the injunction, and decreed “that a jury be summoned to try, on the common law side of this court, the issue, and determine what amount of damage, if any, the complainant, Pollard, has sustained by any breach of warranty or misrepresentations falsely made by the defendant, John M. Brosius; said Brosius, at the time of making said representations, knowing them to be false as to the condition of the steam saw-mill sold by the defendant, Brosius, to the complainant, btiepherd Pollard; upon the trial of which issue, the said Pollard is to hold the affirmative and the defendant the negative.”
The said issue was accordingly tried by a jury which, on the 7th day of October, 1876, found a verdict in these words: “We, the jury, find for the plaintiff and assess his damages at six hundred dollars;” which verdict was ordered to be certified to the chancery side of the court.
On the trial of the issue, the defendants excepted to an opinion of the court given upon said trial, and tendered a bill of exceptions, which was accordingly signed and sealed by the court and made a part of the record; from which it appears “that on the trial of the issues in the cause, testimony having been introduced tending to show that the defendant, Brosius, sold to plaintiff, Pollard, the mill and engine in the proceedings mentioned; that the defendant, Steptoe, who was surety for defendant, Brosius, for the purchase money for the said steam saw-mill, and who was authorized (as well as was defendant. Brosius), to sell the same, and who was anxious to sell the same," and was looking around for a purchaser of the same, accompanied the complainant, Pollard, and the defendant, Brosius, from Liberty to the place where the steam saw-mill then was, a distance of eight miles, in order to effect the sale of the same, and was present pending part of the negotiations for the sale of the same, but was not present at the conclusion of the said sale; *that the said Brosius was the owner of the said engine, and at the time of sale agreed that he would put the engine in repair so that the same should be as good as new; that the engine and mill was to be delivered at the Salem depot on the Atlantic, Mississippi and Ohio rajlroad; and that the said Brosius should set and start the said steam saw-mill in good running order; that subsequently the engine and mill was brought to said depot, and that said Brosius, the defendant, Steptoe, and complainant being present, the said mill and engine was delivered to and received by the complainant, who, accompanied by said Brosius, took same to Frautz’s farm, where the same was to be set up and started in good running order; but before the same was delivered, the plaintiff asked Brosius if he had put the engine in good order, and was told by him that he had not, but that he would do so; that it was then agreed between Brosius, Pollard and Steptoe that the said plaintiff (Pollard), should execute his bonds to said Steptoe, who was a creditor of said Brosius for the purchase money of said mill and engine, and a deed of trust to secure the payment of the same; that accordingly the plaintiff did execute and *234 deliver his. bonds to the said Steptoe for the payment of the purchase money, and did execute the deed of trust to secure the payment of the same, the said Steptoe being then and there a creditor of said Brosius, who accepted said bonds and deed of trust in payment of said indebtedness of said Brosius to him. The plaintiff then asked a witness to state and detail conversations and declarations made by said Brosius at the said depot before the execution of the said bonds and deed of trust, and in the absence of said Steptoe, and on Frautz’s farm whilst Brosius was engaged in setting and starting the said steam saw-mill under the said contract of sale, after the execution of the said bonds and deed of trust, and in the absence of the said Steptoe, in respect to the condition and contract in regard to said ^engine; to which testimony, giving the declarations of said Brosius after the execution of the bonds and deed, of trust, and in the absence of said Steptoe, as to what were the terms of said contract, and how far said contract had been performed, the defendant, Steptoe, by counsel, objected; but the court overruled the objection and permitted said testimony to be given to the jury; to which opinion of the court the defendant, Steptoe, excepted.”
_ A verdict having been found for the plaintiff on the issue as aforesaid, the defendant, Steptoe, moved for a new trial of said issue, because:—
1. The verdict was contrary to the law and the evidence.
2. The court admitted improper and illegal testimony to go to the jury, in this, that the admissions and statements of John M. Brosius as to the terms of sale, and his failure to comply with his part of the contract made after the execution of the bonds and deed of trust, were allowed to be given in evidence to affect the rights of said Steptoe.
3. The verdict is not responsive to the issues directed.
,4. The damages are excessive.
On the 14th of October, 1876, the cause came on again to be heard upon the papers formerly read and the certified verdict of the jury upon the issue aforesaid and the said motion for a new trial of said issue, and was argued by counsel; upon consideration whereof the court overruled said motion and decreed that one of the commissioners of.the court should take an account of the payments made by the complainant, or any one for him, in discharge of his indebtedness for the steam saw-mill aforesaid, and the balance due upon said purchase, and make report, &c. And by consent of parties the court further decreed that the sheriff of the county should be appointed receiver in the cause to take charge of. the steam saw-mill *and sell the same, either privately or by public auction, as in his judgment, would best promote the interests of all concerned, upon a credit of twelve months, except as to so much as was necessary to defray the expenses of sale which might be required in cash; and said receiver was directed to advertise the sale and report his proceedings to the court. And exception being taken by the defendants to the opinion of the court overruling their motion for a new trial of the issue by a jury as aforesaid, and a certificate of the facts asked for, the court declined to give such certificate because the evidence was conflicting, but certified the evidence to have been as set forth in the certificate contained in the record, marked “certificate of evidence.”
Commissioner Palmer made a report in pursuance of said decree of the 14th of October, 1876, to which report sundry exceptions were taken by the plaintiff; and the receiver appointed by said-decree also made his report in pursuance thereof, showing that after advertising the said steam saw^ mill in the Salem Register for sixty daysj and no bidders appearing to buy at the public sale so advertised, he sold the same to John R. Steptoe privately, by. and with the consent of Shepherd Pollard, for the sum of $350, of which sum $28 was paid in cash, and for the balance ($322) bond was taken from said Steptoe, with surety on twelve months’ time.
On the 20th of June, 1877, tine cause came on to be heard upon the papers formerly read, the report of Commissioner Palmer and the exceptions thereto, on consideration whereof the court decreed that the said verdict be approved and confirmed, that the plaintiff’s first exception to said report be sustained, and his other exceptions thereto overruled. “And the court being of opinion that the damages found by the jury are for breach of warranty or misrepresentation at the time of the contract, the amount found by the jury should be *entered as a credit to the complainant as of the date of the contract, and the court having the report of Commissioner Palmer corrected by said commissioner in accordance with this opinion, as appears by statement marked ‘A,’ filed as part of the decree; and it appearing from said corrected statement that the amount due and unpaid by complainant to said Steptoe for said saw-mill, &c., was the sum of $602.06, as of April 1st, 1877, with interest on $524.62, part thereof from said date, which sum is to be reduced b'r $307.16, the worth at the time of the bond for $322 executed 19th January, 1877, by said Steptoe as purchaser of the said steam sawmill, and payable at twelve months, shows as follows: An indebtedness of $602.06 less $307.16, or $294.90 as the balance remaining unpaid from the said complainant to the said Steptoe, as to which amount the injunction heretofore granted is dissolved, and as to the residue of the claim of the said Steptoe, said injunction is perpetuated; and it is decreed that the said Steptoe do recover of the complainant the said sum of $294.90, with interest thereon from the 1st day of April, 1877, till paid; and it is further decreed that unless the sum of $294.90, with its interest aforesaid, be paid by the complainant to the said Steptoe within sixty days from this date, then said Quarles, as trustee as aforesaid, shall proceed to enforce the deed of trust in the bill and pro *235 ceedings mentioned as to the property in said deed mentioned (besides the steam saw-mill), so far as it may be necessary to pay the said sum of $294.90, with its interest and the cost and expenses of sale. And the bond of $322 executed by Steptoe having been directed to be credited on his claim against the complainant, Special Receiver W. W. Brand is directed to cancel said bond and deliver it to said Steptoe.” And there was then a decree for the complainant’s costs against the defendant Steptoe. and that *they may be set off against the said sum of $294.90, and its interest aforesaid, so far as the same may extend.
The appellant complains of being aggrieved by the orders and decrees made in this case, and especially the decree of the 20th day of June, 1877, and assigns the following errors in the same, which will be noticed in their order of assignment:
‘T. The injunction should have been dissolved upon the motion first made, because it appeared that said complainant executed the bonds to your petitioner and the deed of trust to secure their payment, and thereby promised to pay said sums to your petitioner after said steam saw-mill had been received, and without informing your petitioner of any warranty or representation made by said Brosius, and without making known to him any claim, contingent or otherwise, against said Brosius, to be set of by said complainant against said bonds, and said complainant is thereby estopped from setting up any such claim against your petitioner.” 2 Rob. Prac. p. 267 (old ed.), and cases cited.
The court below did not err in this respect. The case is palpably different from the cases cited and relied on by counsel in support of this assignment of error. In those cases there was a manifest intention on the part of the debtor, in becoming bound to the third party, to waive any defences, legal or equitable, he may have had against the original creditor. The transaction with the new. creditor, was, in effect, a novation of the debt, whereas in this case there was no intention of the parties to novate the debt, nor that any right of either of the original contracting parties, inter se, should be surrendered. Shepherd Pollard was willing, and he so declared, to pay any debt he might owe in the transaction to John M. Brosius, or any other person he might designate. It was immaterial to him to whom he paid it. Pie *might have given his bonds to Brosius, who might have assigned them to Steptoe. Had he done so, he would in the absence of a special agreement to the contrary, certainly not have surrendered any of his defences, legal or equitable, to the assignee. The actual transaction was in effect the same thing. Instead of giving his bonds to Brosius to be assigned to Steptoe, he gave them directly to Steptoe. Pie derived no benefit whatever from that mode of settlement, while Steptoe was thereby himself greatly benefited. Instead of having Brosius alone for his debtor without any security for the debt, he acquired the bonds of Pollard secured by deed of trust, not only on the saw-mill and fixtures, but also on a large additional estate, real and personal, and Brosius himself remained still bound for the debt, but not as assignor. The negotiable note for $145 was payable to Brosius, who endorsed it to Steptoe, and the bonds would no doubt have been payable and assigned in the same way, but that the course actually pursued was more direct and simple. Pollard says that he considered Brosius as still the owner of the debt, notwithstanding the bonds were payable to Steptoe; which he supposed was induced by a purpose which he named. But whether that be true or not, the effect is the same, in the absence of a clear intention to the contrary. Instead of which, it is manifest from all the surrounding facts and circumstances, that Pollard intended by the form of the transaction to surrender no defence, legal or equitable.
The distinction between this case and the cases cited on this branch of the subject by the counsel for Steptoe is manifest. Those cases are Buckner, &c., v. Smith, 1 Wash. 296; Hoomes, ex’or of Elliott, v. Smock, Id. 389; Davis’ adm’r v. Thomas, &c., 5 Leigh 1; Pettit v. Jennings, &c., 2 Rob. R. 676. But it is needless to state and review these cases, and we will proceed to consider the next assignment of error, which is:
*“2. It was error to direct an issue in said cause, because it was clear from the evidence that the mill had been delivered in good order, and that the complainant was fully satisfied with it and made repeated promises to comply with his contract to pay off his bonds long after he received said mill.”
The grounds of defence relied on in the injunction bill were palpable, if true. Had they been confessed by the answers, they would certainly have entitled Pollard to the relief which he claimed. They were denied by the answers of Brosius and Steptoe, to which the plaintiff replied generally. The evidence on each side was conflicting. The evidence of the plaintiff fully sustained the allegations of his bill, while that of the defendants, Brosius and Steptoe, was to the contrary. What, in such a state of doubt and difficulty, was the court to do but to direct an issue to be tried by a jury? which was accordingly ordered. That it was proper so to order, is manifest, and such propriety is shown by the cases cited by the counsel for the appellees, if any citation of authority can be necessary on such a question. Those cases are Isler, &c., v. Grove, &c., 8 Gratt. 257; Mettert v. Hagan, 18 Id. 231; Hord’s adm’r v. Colbert, 28 Id. 49. The complainant’s repeated promises to make payment, referred to in this assignment of error, no doubt had reference to what he actually owed after deducting all the discounts to which he was entitled. But even if they referred to the whole original debt they would not estop him from making any defence to which he might otherwise have been entitled, as such promises were made without consideration. We think the court did not err in ordering an issue.
*236 . “3. If an issue was proper, your petitioner should not have been made a party defendant, and required to defend the same for the reason that the issue to be tried was solely a matter between the said complainant and the ’'Isaid Brosius, as by his contract the said Pollard, in effect, agreed to look to said Brosius alone for reparation in case he was injured, and your petitioner agreed to look to said complainant alone for the amount of said bonds, and said Brosius was relieved from his indebtedness to your petitioner to the amount of said bonds.”
We think this assignment of error is wholly unfounded in fact, as plainly appears from what we have already said in regard to the first and second assignments of error, and nothing more need therefore be said in regard to it. The next assignment of error is—
“4. If your petitioner was to be affected by said verdict found upon said trial, then it was error in said court to allow to go to the jury as evidence the declarations made by said Brosius after said contract was entered into, and in the absence of your petitioner.”
There are several reasons why we think this assignment of error is not well founded. In the first place, Brosius and Steptoe were both interested in the sale made by Brosius to Pollard. But Brosius was the vendor and made the contract of sale for the benefit of himself and Steptoe. Steptoe was sometimes present and sometimes absent, pending the negotiation between vendor and vendee, and before and at the execution of the bonds and deed of trust. The transaction was not concluded on the last-mentioned occasion; after the delivery of the property and the execution of the bonds, note and deed of trust, something still remained to be done by Brosius and Pollard in execution of the contract. The mill was to be set up and set in motion under thfe superintendence and direction of Brosius, who was a machinist and had full experience in the matter, while Pollard was ignorant and knew nothing on the subject, as he declared to Brosius. Immediately after the delivery of the property and the execution of-the bonds and deed of trust at, Salem, Brosius and Pollard went together to Frautz’s *farm with the saw-mill to set it up and start it, under the said contract of sale. The “declarations of said Brosius, at the said depot, before the execution of the said bonds and deed of trust, and in the absence of said Steptoe. and on Frautz’s farm, whilst Brosius was engaged in setting up and starting the said steam saw-mill, under the said contract of sale, after the execution of the said bonds and aced of trust, and in the absence of said Steptoe, in respect to the condition and contract in regard to said engine.” were parts of the res gestae, and as such were admissible evidence. Steptoe trusted to Brosius to make and execute the contract, and in effect made him his agent for that purpose. Pollard supposed that Brosius alone, and not Steptoe also, was interested in it, notwithstanding the form of the bonds and deed of trust. But even if he knew what was the interest of Steptoe in the transaction, he was yet warranted in dealing with Brosius as he did till the transaction was closed by setting up and starting the saw-mill as aforesaid. In the second place, it does not appear what were the declarations of Brosius which were objected to, and therefore it does not appear ^that they were material, or that Steptoe could have been injured by admitting them as evidence. And in the third place, the question arose upon the trial of an issue out of chancery, and it devolved on the court to render a decree upon the proper pleadings and proofs in the case, which it might do without regard to any improper evidence introduced on the trial of the issue, or even to the verdict itself, the only object of which is to inform the conscience of the court, which may be otherwise sufficiently informed. In this case we think the decree is fully sustained by the evidence, even if the portion which was objected to had been excluded. Indeed, that portion seems to be only cumulative.
This court had occasion in Brockenbrough’s ex’ors v. Spindle’s adm’rs, 17 Gratt. 21, 27, 28, and in Powell & *wife v. Manson, 22 Id. 177, 191, 192, to comment on the nature of an issue directed by a court of chancery in an ordinary suit, and the effect of the verdict on such an issue. In the latter case, in which one of the questions was whether the court below erred in refusing to grant a new trial of an issue out of chancery, upon the ground that the verdict was contrary to law and the evidence, which was set out in a bill of exceptions, Judge Staples, in an opinion in which the other judges concurred, said: . “This court having before it this evidence, all the depositions and exhibits read at the hearing, is competent to decide whether the purposes of justice required another trial to be had. The rule in such cases is well settled. The court will consider not merely whether the evidence adduced before the jury warrants the verdict, but also whether, having regard to the whole case, further investigation is necessary to attain the ends of justice. And although there may have been a misdirection, or evidence may have been improperly rejected, it will not grant a new trial if the verdict appears to be right upon a consideration of all the evidence, including that which was rejected.” And among other references which he made was one to Barker v. Ray, 2 Russ. R. 63, in which Lord Eldon’s language is very pertinent to the present subject. In George & als. v. Pilcher & als., 28 Gratt. 299, this court reversed the decree of the court below on the ground that the court erred in not ordering a new trial of the issue which had been directed and tried in the case, on the ground of the improper exclusion of evidence offered on the said trial. But in that case the evidence introduced on the trial was not certified in the record, and it was impossible for this court to say that the party complaining was not injured by the exclusion of evidence aforesaid.
We are therefore of opinion that the court below did *not err, at least to the prejudice of the appellant, in re *237 spect to the matter of the fourth assignment of error; and now as to the fifth.
“5. The court erred in overruling the motion of your petitioner for a new trial, for the reason assigned in the fourth assignment or error; and further, because the verdict was not responsive to the issue, being too general and indefinite, and because the damages were excessive. All the evidence as to damages was of so general and indefinite a nature, that the jury could arrive at no sum but by guessing it, except as to damage arising from the defects in the property, and the complainant himself does not claim in his bill on this account more than $350, nor is it anywhere proven to have been over $500; and moreover the issue by its terms confines the enquiry to damages arising from defects of the property.”
We are of opinion that the court below did not err in this respect. The certificate is of evidence only, and not the facts proved. If the evidence in favor of the appellee when in conflict with that in favor of the appellant be credited in deciding the case in the appellate court, which is the true rule on the subject, we think there can be no room for doubt on the question, and that though the evidence objected to on the issue be excluded, is as shown in considering the fourth assignment of error. We think the verdict was responsible to the issue, and was not too general or indefinite, and that according to the evidence, especially that in favor of Pollard, the damages were not excessive. And now in regard to the last assignment of error.
“6. It was error to allow the sum found by the jury to be set off against the demand of your petitioner, for the reason that it was admitted by the complainant and proven by other witnesses, that before he executed the bonds and deeds he was told by said Brosius that he had not done all he promised as to repairing the said steam *saw-mill, but (hat he. would do whatever might be necessary to put it in good running order; and relying upon this promise, complainant afterwards executed his bond to your petitioner and promised to pay them as they became due, said complainant well knowing at the time that your petitioner by receiving said bonds released said Brosius from his indebtedness to him to the full amount of said bonds.”
We have already fully shown that this assignment of error is groundless, by what we have said in regard to the other assignments of error, and therefore think the court below did not err in this respect. And upon (he whole, we think there is no error in any of the orders and decrees complained of, and that they ought to be affirmed.
Decree affirmed.