Moncure, P.,
delivered the opinion of the court. After stating the case he proceeded:
There are but two assignments of error in the petition for the appeal in this case. They are :
First. That on the trial of the issue, after the plaintiff had proved the signature of the attesting witness to the receipt marked Kb. 1, filed with the bill and inserted in the bill of exceptions taken on the said trial, the circuit court erred in allowing the defendant to introduce as evidence to impeach said receipt testimony tending to show that the signature of the per *340 son whose name was subscribed to said receipt was not in his handwriting ; and,
Second. That the circuit court erred in overruling the motion of the plaintiff to set aside the verdict and grant a new trial of said issue, on the grounds stated in bill of exceptions bio. 2.
As to the first assignment of error, certainly a subscribing wfftness to a written instrument, if he attested it by request, express or implied, of the author of the instrument, which will be presumed to have been the case in the absence of evidence to the contrary, must •be produced to testify as to the execution of the said-instrument by the party who seeks to set it up or show its execution, provided the said witness is alive, and in the jurisdiction of the court, and competent to testify; but if not, the genuineness of his attestation to the said instrument must be proved by the said party, if it can be, by proof that the signature to the attestation is in the handwriting of the subscribing witn ess.
It may be out of the power of the said party to produce the attesting witness on the trial, or to prove his handwriting or-the genuineness of his signature to the attestation; or the subscribing witness, if produced on the trial, may not recollect the execution of the instrument, or deny the genuineness of his apparent attestation thereof; or the proof .of the execution of the instrument in that way may not be sufficient in the estimation of the party by whom it is introduced, or of the court in which the trial is pending. In any such case it is competent for the said party to prove the genuineness of the signature of the author of the instrument to the same by other evidence than that of the attesting witness, or proof of his handwriting if he cannot be produced on the trial. Such is the law of evidence in regard to the party on *341 whom devolves the burden of proving the due execution of an instrument to which there is an attesting witness, and which may be offered in evidence on the trial of a controversy.
But whatever may bo the evidence introduced by the party upon whom the burden of proving the due execution of an instrument may devolve in the trial of a controversy concerning the same, certainly it is competent to the adverse party to prove, if he can, that the name signed to the said instrument as that of its author is not in the handwriting of the party thus claimed to he such author.
That such is the well-settled law, there can be no doubt; and to show that it is, it can only be necessary to refer to standard elementary works on the subject and the cases therein cited, many of which are referred to in the printed argument of the learned counsel for the appellee. See 1 Greenleaf on Evidence, §§ 569-578; 1 Wharton on the Law of Evidence, §§ 723-730; and the notes thereto.
The attesting witness to the instrument in question in this case being dead at the time of the trial of the issue, the plaintiff, on whom devolved the burden of proving said instrument on the said trial, introduced evidence to prove the genuineness of the signature of the attesting witness; and both parties introduced evidence upon the question, whether the signature, “ W. J. Bead,” to the said instrument as its author, was the handwriting of W. J. Bead, assignor of Henry D. Elood, whose administrator, Thomas J. Kirkpatrick, is the appellee in this •case.
The court is therefore of opinion that the circuit court did not err in allowing the defendant to introduce, as evidence to impeach the said receipt, testimony tending to show that the signature of the person whose name *342 was subscribed to said receipt as its author was not in the handwriting of the alleged author.
As to the second assignment of error, the court is of opinion that the circuit court did not err in overruling the motion of the plaintiff to set aside the verdict and grant a new trial of the said issue, whether on the grounds, or any of them stated in bill of exceptions No. 2 as aforesaid, or any other ground whatever.
There are three grounds so stated, which, and our opinion in regard to them, are as follows:
“1st. That the verdict was contrary to the evidence.” There is certainly a great conflict in the evidence as to the question whether the signature, “ "W. J. Bead,” to receipt No. 1, filed with the hill, is in the handwriting of "W. J. Bead, the assignor of Henry 1). Blood, the intestate of Thomas J. Kirkpatrick, the appellee in this cause. The mere fact of the existence of such a conflict seems of itself to be a sufficient and unanswerable ground for affirming the action of the court,below in overruling the motion of the plaintiff to set aside the verdict and grant a new trial of the said issue. It is the peculiar province of a jury to decide a question of fact arising in a cause, and upon the weight of the testimony on which it depends. They see and hear the witnesses testify in the cause, and when tlie judge who presides at the trial, and also sees and hears the witnesses testify, refuses to set aside the verdict, an appellate court, which has not that advantage, will not reverse the judgment upon the ground that the verdict is contrary to the weight of the evidence. This is an established rule of law well settled by many authorities, and among others the following decisions of this court cited by the counsel for the appellee, viz: Goode v. Love's adm'rs, 4 Leigh, 635; Brugh v. Shanks, 5 Id. 598; Patteson v. Ford, 2 Gratt. 19-23; Bell v. Alexander, 21 Id. 1; Blosser v. Harsbarger, Id. 214; Hilb v. Peyton, 22 Id. 550; Blair & Hoge v. Wilson, 28 Id. 165, *343 175. Other strong reasons might he given in support of the same view, but the one already given is believed to be sufficient. We will therefore proceed to consider the two remaining grounds for setting aside the said verdict and granting a new trial stated in said bill of exceptions No. 2.
“2d. That the court had erred in allowing the defendant, on the trial, to give evidence before the jury tending to show that the signature of W. J. Read to the exhibit No. 1 was not his genuine handwriting, after the plaintiff had proved that the attestation of Sampson Karnes, the subscribing witness to said paper, who is dead, was in the handwriting of said Karnes.”
The same question is here presented which is also presented by the first assignment of error, and we have, therefore, already expressed our opinion upon it; according to which it was clearly an insufficient ground for setting aside the verdict and granting a new trial of the issue.
“ 3d. Because of the statement contained in the paper signed by two of the jurors who tried said issue, which paper is in the following words and figures, to-wit:
“The undersigned, members of the jury that tried the issue out of chancery in the case of Steptoc v. Flood’s ex’or, do certify that in determining the issue and arriving at the conclusion that was reached, the jury did not pass upon the genuineness or validity of the receipt purporting to have been executed by W. J. Read and -witnessed by Sampson Karnes. We were of opinion that the said paper was proved, and ought to be considered, but the residue of the jury insisted that the said paper had nothing to do with the case; that from the face of the check it appeared that the debt was a partnership debt, and ought to be so decided. We were of a different opinion, but were persuaded against our judgments to *344 agree to the verdict, and regret now that we did consent to the verdict, and state that it is now against oar judg- ■ meats.
“J. M. Kagland,
“J. A. Dooley.”
It is certainly a general rule that affidavits of jurors to impeach their verdict should be rejected, first, because they would tend to defeat their own solemn acts under oath; second, because their admission would open a door to tamper with jurymen alter they have given their verdict; and third, because they would be the means, in the hands of a dissatisfied juror, to destroy a verdict at any time after he had assented to it. 3 Graham & Waterman on New Trials, pp. 1428, 1450. There are, no doubt, exceptions to this general rule, but without attempting to lay down the exceptions, it is sufficient to refer to the work just cited and the notes thereto, and to say that in our opinion this case conies within the general rule, and not any of the exceptions aforesaid. Indeed,it does not appear that the certificate of the two jurors aforesaid was even sworn to by them; but whether sworn to or not, our opinion as to its effect upon the verdict is as aforesaid. See Bull’s case, 14 Gratt. 613, 626, and Read's case, 22 Id. 924, 947.
And such would be the case if this were an ordinary jury trial. Hut, instead of being so, it is a trial of an issue out of chancery, the object of which is to inform the conscience of the court of chancery which directs the issue. That court may disregard the issue after directing it, or decide differently from the jury which tried the issue. And especially if the issue be tried before the same court, which sees and hears the witnesses testify on its trial, and concurs as to the correctness of the verdict found by the jury upon the issue, the said court will not set aside the verdict and order a new trial of the *345 issue because one or more of the jury may certify, or even swear, to the effect of the certificate of the two jurors in this case. On this subject see the case of Steptoe v. Pollard, 30 Gratt. 689, and the cases therein referred to.
The issue in this case was “to ascertain whether the debt for which the judgment in the bill mentioned, of ‘Read, for, &c., against Quarles & Steptoe,’ was recovered was the individual debt of Jesse L. Quarles or was really the debt of Quarles & Steptoe”; and not to ascertain whether the signature, "W\ J. Read, to exhibit Ho. 1, filed with the bill, was in the handwriting of W. J. Read, the assignor of II. D. Mood, the intestate of T. J. Kirkpatrick, the appellee in tins case. It is alleged by Steptoe, the appellant, that that paper was mislaid or lost for many years, and therefore was not produced nor relied on in this litigation, nor even mentioned until the filing of the bill in this case, on the 7th of July, 1874, which was filed with that bill as “exhibit Ko. 1.” It is very clear from the evidence in the record that that paper, if really ever lost, was found many years before it was produced and relied on as aforesaid, after the death of W. J. Read, II. D. Mood and K. II. Campbell, three of the chief actors in the transaction, who might, perhaps, have fully explained it. The action was originally brought by Read against Quarles & Steptoe to recover the amount of his check to them drawn in 1854, not long after that check was drawn, when all the parties to the transaction were alive, and doubtless remembered everything about it. Quarles’ liability to Read for the amount of that check was never denied by Quarles; but Steptoe contended that though the money was loaned by Read to Quarles by means of a check to Quarles & Step-toe, who were partners, and though the money was applied by Quarles to the payment of a partnership debt, yet that as between him and Quarles, the latter was *346 bound to pay that debt, and therefore, as between the two, the debt created by the loan of the check was really - and truly the debt of Quarles individually. It does not appear that Read had any knowledge or information as to the state of accounts between Quarles and Steptoe, ■which-, between themselves, may in fact have made this debt the individual debt of Quarles. So far as Read was concerned, he gave credit to the firm of Quarles & Steptoe, and his check was applied to the purposes of the firm, and there can be no doubt about the legal liability of the firm to him for the amount of the check. Even if the paper marked exhibit Eo. 1 ever was a genuine paper, a question upon which the evidence, as. we have seen, is, to say the least of it, extremely conflicting, yet there must have been some arrangement between the parties concerned, made soon after the date of that paper and the check, to-wit: December 23d, 1854, which annulled the said paper and left the firm indebted to Read in the amount of the check; all of which might have been fully explained had the question been raised when all the parties were alive. Exhibit Eo. 1, if a genuine and unrevoked paper, as much tends to exonerate Quarles as Steptoe; and yet Quarles does not pretend, and never did pretend, that it exonerated him or that he does not still owe the debt. The same, doubtless, may be truly said of Steptoe, though the antiquity of the transaction and the death of some of the chief agents in it make an explanation of it by the appellee impossible at this late day.
The court is therefore of opinion that there is no error in the decree appealed from, and that the same ought to-be affirmed.
The learned counsel for the appellees contented that his demurrer to the bill on some one or more of the grounds therein specially assigned ought to have been, sustained: and even if it ought not to have been sus *347 tained, that the court of chancery ought to have dismissed the hill upon the pleadings and the proofs in the cause, without directing any issue therein. And he sustained his views on these subjects by a reference to various books and cases. But it is unnecessary to consider .and decide the questions thus presented, and we therefore decline doing so; our opinion above expressed, that there is no error in the decree appealed from, and that it ought to be affirmed, being conclusive of the case in favor of the appellee, and just as much so as if all the points contended for by him were decided in his favor.
Decree affirmed.